UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID G.,[1]

                              Plaintiff,        Case # 19-CV-1490-FPG

v.                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                              Defendant.
_____

## INTRODUCTION

On June 3, 2016, Plaintiff David G. protectively filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging disability beginning on June 9, 2015 due to non-epileptic seizures, dizziness, and related conditions. Tr.[2] 206-07, 252. The Social Security Administration ("SSA") denied his claim, and Plaintiff filed a timely request for a hearing. Tr. 137-40, 150-51.

Plaintiff appeared, with counsel, at a hearing before Administrative Law Judge Mary Mattimore ("the ALJ") on August 3, 2018. Tr. 40-100. Plaintiff, his father, and a vocational expert testified at the hearing. On September 11, 2018, the ALJ issued an unfavorable decision. Tr. 15-33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 11. Plaintiff replied. ECF No. 14. For the reasons that follow,

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 4, 5.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 1383(c)(3).

Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education,

and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above and determined that Plaintiff was disabled, within the meaning of the Act, from June 9, 2015 to March 16, 2018. Tr. 16-27. Relevant for purposes of this appeal, and as part of the RFC, the ALJ determined that Plaintiff would be absent two days per month on an ongoing and consistent basis secondary to seizures. Tr. 23.

However, the ALJ determined that, starting on March 17, 2018—after Plaintiff had been released from mental health counseling—Plaintiff's condition improved such that his disability ended. Tr. 27-33. Utilizing the five step process described above with respect to the period on and after March 17, 2018, the ALJ found at steps one and two that Plaintiff had not developed any new impairments since March 17, 2018, the date Plaintiff's disability ended, and therefore that Plaintiff's severe impairments remained unchanged: major depressive disorder; adjustment disorder with anxiety; neurocognitive disorder; conversion disorder with seizures or convulsions; asthma; deep vein thrombosis; mild degenerative disc disorder of the thoracic spine; degenerative disc disease of the lumbar spine; sacroiliac joint dysfunction; lumbar radiculopathy; and obesity. Tr. 19-20, 27. The ALJ determined that diabetes and glaucoma were not severe impairments. Tr. 20. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 20-21.

Next, the ALJ determined that Plaintiff retained the RFC to perform "light work" with a number of additional limitations, but that he would no longer be absent from work for two days

per month. Tr. 29-33. At step four, the ALJ found that Plaintiff was still incapable of performing his past relevant work. Tr. 32. At step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. Tr. 32. Therefore, the ALJ concluded that Plaintiff was not disabled beginning on March 17, 2018. Tr. 32.

**II.   Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff's disability ceased as of March 17, 2018. ECF No. 9-1 at 21. Specifically, Plaintiff argues that the record does not contain substantial evidence that Plaintiff's medical condition improved and that Plaintiff would no longer suffer seizures requiring him to be absent from work for two days per month.  The Court agrees with Plaintiff.

"Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that he or she was disabled or continues to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, or laboratory findings associated with a claimant's impairments." *Nascimento v. Colvin*, 90 F. Supp. 3d 47, 53-54 (E.D.N.Y. 2015) (quoting another source); *see also* 20 C.F.R. § 404.1594(b)(1). "[T]o determine whether medical improvement has occurred, [the Commissioner] must compare the current medical severity of the impairment to the medical severity of the impairment at the time of the most recent favorable medical decision." *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) (internal quotations, citations, and brackets omitted).

Here, the ALJ concluded that Plaintiff experienced a medical improvement as of March 16, 2018, when he was discharged from therapy due to "increased functionality and discontinued attendance." Tr. 28. The ALJ reasoned that Plaintiff's improvements were evidenced by the fact

that he began driving short distances in January 2018, he took up several hobbies, was considering returning to work, and reported reading various genres of books. Tr. 28-29.

In so concluding, the ALJ gave "significant weight" to an August 2016 opinion from state agency provider J. Dambrocia, which found that Plaintiff would have moderate limitations in understanding, remembering, and carrying out instructions, maintaining a schedule and attendance, responding to changes in work settings, and traveling in unfamiliar places. Tr. 30, 101-13. The ALJ also afforded "significant weight" to the opinion of psychological consultative evaluator Yu-Ying Lin, Ph.D., who concluded in July 2016 that Plaintiff was mildly impaired in attention and concertation and moderately impaired in memory. Tr. 31, 598-602. The ALJ assigned "some weight" to records from neurologist Robert L. Glover, M.D. in 2016 and January 2018 indicating that Plaintiff's seizures were improving, Tr. 30, 1265-89, and a July 2016 opinion from consultative evaluator Harbinder Toor, M.D., Tr. 31, 594-97.

The ALJ gave "some weight" to opinions from June 2016 in which Plaintiff's treating physician, Alexander Corbett, M.D., opined that Plaintiff was unable to work due to several blackout episodes per week. Tr. 30, 1307. The ALJ gave "limited weight" to Dr. Corbett's 2018 records indicating that Plaintiff continued to experience psychogenic seizures. Tr. 31. Finally, because they are "interested parties," the ALJ gave limited weight to the testimony of Plaintiff's father, who testified that, in 2018, Plaintiff continued to have memory issues and seizures, and to the log kept by Plaintiff's wife, which shows that Plaintiff experienced several seizures per week into June 2018. Tr. 31, 305-12. For the reasons explained below, the Court disagrees with the ALJ that this evidence substantially supports the RFC for the period on and after March 16, 2018.

First, the evidence the ALJ cites for the proposition that Plaintiff's condition improved in March 2018 was generated before the alleged improvement date. The pre-dated records therefore

cannot support the ALJ's conclusion that Plaintiff improved thereafter. *See Ritchie v. Saul*, No. 19cv01378, 2020 WL 5819552, at *18 (S.D.N.Y. Sept. 29, 2020) ("Moreover, for the *entire* period of Plaintiff's supposed medical improvement (which post-dated the Hearing), the Court has been presented with almost *no* pertinent medical records, let alone any test results or medical opinion evidence that could support the ALJ's RFC determination for that period." (emphasis in original)); *McDowell v. Colvin*, No. 2:15-cv-87, 2016 WL 2347854 (D. Vt. May 4, 2016) (finding that records produced before date of alleged medical improvement are "particularly unhelpful" in demonstrating a plaintiff's improvement because they were prepared on "a date falling well within the period that the ALJ found [plaintiff] to be disabled").

Second, even if the records can be read as demonstrating that Plaintiff's mental health conditions improved so as warrant a change to that part of the RFC, there is no evidence to indicate that Plaintiff's seizures improved such that he would no longer suffer from debilitating seizures requiring him to be absent at least twice a month. Similarly, that Plaintiff was able to drive, read, and work on hobbies, Tr. 28-29, is irrelevant to whether Plaintiff would be absent due to seizures. *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10 (2d Cir. 2020) (summary order) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (quoting another source)).

In fact, the evidence establishes that the frequency and severity of Plaintiff's seizures did not abate upon his release from mental health counseling. Plaintiff testified at the hearing that his seizures improved somewhat in January 2018,[4] but then his condition deteriorated again. Tr. 1351. When discharging Plaintiff from counseling on March 16, 2018, Plaintiff's therapist Richard Caton

---

[4] Plaintiff's statement is consistent with Dr. Grover's indication that Plaintiff's seizures improved in January 2018.

acknowledged that Plaintiff experienced seizures every nine days. Tr. 740. A seizure every nine days equates to approximately three seizures a month, resulting in one more absence per month than the ALJ's pre-March 2018 RFC would allow. Plaintiff's reports are corroborated by his father's testimony and the seizure log kept by his wife, which indicates that, even in 2018, Plaintiff suffered a seizure every one to two weeks. Tr. 311-12. Plaintiff reported that he would feel exhausted, confused, and debilitated after experiencing a seizure. Tr. 1351. Moreover, while Caton discharged Plaintiff in part because of his "stabilization and increased functionality," Tr. 741, the records are clear that this stabilization and increased functionality relate to Plaintiff's mental health, not necessarily to the frequency or severity of his seizures. For his part, Plaintiff indicates that he stopped mental health counseling because it was not benefitting him, not because his seizures decreased. Tr. 1351-52 ("There were a couple times I went in and I actually felt worse coming out of the appointment than I would . . . going in.").

Although the Court understands that the ALJ views Plaintiff's own statements as self-serving, such statements can be an "essential diagnostic tool" and should not be readily dismissed. *See Popick v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 157, 168 (N.D.N.Y. 2012) ("As such, the ALJ should not have been so quick to dismiss Dr. Gindes's diagnosis because it may have been based on Plaintiff's self-reports."). Moreover, there simply is *no* evidence in the record to support the ALJ's conclusion that Plaintiff would no longer be absent twice a week due to seizures. This is error because the vocational expert testified, and the ALJ appeared to agree, that absences of twice a month would render Plaintiff unemployable. Tr. 1365.

Compounding this error, the ALJ disregarded Dr. Corbett's treating opinions regarding Plaintiff's functioning in 2018 without providing any good reasons. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (explaining that the treating physician rule "mandates that the medical

opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence"). For all of these reasons, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is GRANTED, the Commissioner's motion for judgment on the pleading, ECF No. 11, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 19, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court